UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWIN WHITESIDE and CHARLES DAVIS,

    Plaintiffs,

v.    Case No. 11-10091

STATE FARM FIRE AND CASUALTY
COMPANY,

    Defendant.
                                  /

**ORDER GRANTING DEFENDANT'S "MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO PLAINTIFF EDWIN WHITESIDE"**

Before the court is Defendant State Farm Fire and Casualty Company's "Motion for Partial Summary Judgement . . ." filed on August 22, 2011. Plaintiff Edwin Whiteside filed a response to the motion on September 12, 2011. The court concludes that a hearing is unnecessary. See E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant the motion.

**I. BACKGROUND**

The material facts[1] underlying this case are not controverted, and stem from a fire in November, 2009, at a residential property located at 8068 Central Street, Detroit, Michigan ("Central Street Property"). Plaintiffs Davis and Whiteside presented a claim for insurance proceeds from a homeowner's insurance policy issued by Defendant, but after conducting an investigation, Defendant denied Plaintiff Whiteside's claim for

---

[1] Plaintiff Whiteside did not adhere to this court's motion practice guidelines with respect to factual contentions. The court's March 1, 2011 "Scheduling Order" requires Plaintiff to number his statement of facts to correspond to the moving party's statement. Plaintiff did not do so, providing instead his own "Synopsis of Facts," which in any event do not appear to contest any of Defendant's purported facts.

insurance proceeds, concluding that he had no insurable interest, and that he had violated the policy's intentional acts and fraud provisions of the insurance policy.

In June 2006, Whiteside secured a loan in the amount of $18,000 by granting a mortgage to Bond Corporation ("Bond") on the Central Street Property. (Mot. Ex. O.) In September 2007, Bond issued a "Notice of Default" to Whiteside, indicating that the loan was in default and he would have 30 days to pay the total amount past due. (Mot. Ex. U.) Whiteside failed to pay the past-due amount and now concedes that Bond foreclosed on the Central Street Property. (Pl.'s Resp. at 8.) Whiteside further admits that Bond purchased the property at a sheriff's sale on January 9, 2008, and that he did not redeem the property before the six-month statutory redemption period expired on July 9, 2008. (*Id.*) Therefore, after the expiration of the redemption period, Bond was the rightful owner of the Central Street Property.

Whiteside's relationship with Bond, however, did not end after the redemption period expired. Bond's records indicate that, Tom Maleski, a former Bond collection manager, continued to communicate with Whiteside in an effort to keep Whiteside in the Central Street Property and avoid eviction. On September 25, 2008, Maleski noted in Bond's collection notes:

> To-SD that he will call tomorrow with information to do two paymetns [sic]- told [Whiteside] if he could do that than I will set him up on a lease to keep him in the premises. Told him nothing was guaranteed at this point, M [sic] but if he can make his payments then I will do everything I can to keep him there and try to get him ownership back.

(Pl.'s Resp. Ex. C.) According to Jodie Roberts, a Bond employee, Bond will often lease a foreclosed property to the original mortgagor, and if the mortgagor makes on-time payments, and stays in contact with Bond during the lease period, Bond "will

2

consider selling the home back to the owner on a land contract." (Def.'s Reply Ex. A at 47.)  In this case, both parties agree that Whiteside made a payment in the amount of $677 to Bond on September 26, 2008, and thereafter, they entered into a lease agreement for the Central Street Property.  On October 29, 2008, Bond recorded in its collection notes that the lease agreement had been sent to Whiteside, and the lease was to begin on November 8, 2008.  The only evidence of the terms of the lease offered by either party is an unsigned document submitted by Defendant purporting to be a lease agreement between Whiteside and Bond.  This document indicates that the lease was to end on October 1, 2009, and Whiteside was required to pay $340 per month with each payment due on the eighth day of each month.  (Def.'s Reply Ex. C.)  The lease agreement also contains a provision titled "Ownership Following Foreclosure," which states:

> Tenant(s) acknowledge that following foreclosure by advertisement and Tenants' failure to pay the amount owing (and redeem the property), Bond Corporation (or name of bank) is the owner of the Premises by operation of the law. Notwithstanding, Tenant(s) wish to rent the premises from Landlord and continue living in the Premises and Landlord agrees to rent the premises to Tenant(s) in accordance with the provisions of this Lease.
>
> Tenant(s) further acknowledge that they may request that Landlord entertain selling the Premises back to Tenant(s) in the future.  This Lease does not obligate Landlord to sell or finance the sale of the Premises to Tenant(s) in the future, however if Tenant(s) makes timely payment of their financial obligations in this Lease, Landlord might consider a future sale to Tenant(s)

(*Id.*)

The parties disagree about Whiteside's payment history after he entered into the lease agreement with Bond.  Defendant offers evidence that Whiteside made two payments for the months of November and December 2008, and then failed to make

3

any payments again until June 2009. (Def.'s Reply Ex. B at 52.) According to Defendant, Bond served Whiteside with a demand for possession for non-payment of rent on June 26, 2009, indicating that Whiteside owed $1,360 in past-due rent. (Def.'s Reply. Ex. D.) Whiteside alleges that between September 2008 and November 2009, he made rent payments totaling $5,137 to Bond, but does not state when the payments were made or whether the alleged payments were timely. (Pl.'s Resp. at 5.)

The parties' disagreement over the nature and extent of Whiteside's rent payments to Bond is, however, immaterial. The uncontroverted evidence establishes that, on September 8, 2009, Bond received a judgment from the 36th Judicial District Court of Michigan granting Bond the right of possession of the Central Street Property because Whiteside owed past-due rent in the amount of $1,697.11. (Def.'s Reply Ex. E.) According to the judgment, unless Whiteside paid all past-due rent by September 18, 2009, an order evicting Whiteside would be issued. (*Id.*) On October 14, 2009, Bond filed an application for an order of eviction, alleging that "[n]o payment [had] been made on the judgment or no rent [had] been received since the date of judgment," (Def.'s Reply Ex. F). It is not clear whether the order of eviction had been served on Whiteside before the fire. (Def.'s Reply Ex. A at 62.)

On October 23, 2009, 18 months after the Central Street Property was foreclosed upon and purchased by Bond at the sheriff's sale, and fewer than two weeks after the application for eviction had been filed, Whiteside purchased a homeowner's insurance policy from Defendant. (Mot. Ex. A.) Then, on November 15, 2009 — a scant three weeks after the policy was purchased — a fire broke out at the Central Street Property (Mot. Ex. B.). Whiteside submitted a claim to Defendant the very next day (Mot . Ex.

4

C.). Upon the completion of an investigation, Defendant denied Whiteside's insurance claim, stating that it concluded that Whiteside had no insurable interest in the dwelling, that Whiteside intentionally caused or procured the loss, and that Whiteside intentionally misrepresented and concealed material facts relating to the loss. (Mot. Ex. D.)

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton,* 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict — 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Id.* at 252 (alteration in original) (citation omitted). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III. DISCUSSION

Defendant seeks summary judgment on a narrow issue: whether Plaintiff had an insurable interest in the Central Street Property at the time of the November 15, 2009 fire. Both parties agree that Michigan law controls the interpretation and enforcement of the insurance contract.

Under Michigan law, insurance contracts "founded upon mere hope and expectation and without some interest in the property . . . are objectionable as a species

of gambling," are "treated as contravening public policy, and are therefore void." *Crossman v. Am. Ins. Co. of Newark, N.J.*, 164 N.W. 428, 430 (Mich. 1917). Michigan courts, however, have historically interpreted the requirement of an insurable interest in property broadly, stating:

> An insurable interest does not, of necessity, depend upon ownership of the property. It may be a special interest entirely disconnected from any title, lien, or possession. If the holder of an interest in property will suffer direct pecuniary loss, by its destruction, he may indemnify himself therefrom by a contract of insurance. The question is not what is his title to the property, but rather, would he be damaged pecuniarily by its loss.

*Id.* A mortgagor's right to redemption after a property has been foreclosed upon is an insurable interest, *Perkins v. Century Ins. Co., Ltd., of Edinburgh, Scotland*, 7 N.W.2d 106, 107 (Mich. 1942), as is an individual's enforceable option to purchase property, *Crossman*, 164 N.W. at 430. Despite Michigan's broad interpretation of what constitutes an insurable interest, the court concludes that Defendant has carried its burden by showing that there is an absence of evidence to support a finding that Plaintiff had an insurable interest in the Central Street Property at the time of the fire.

Defendant has proffered detailed evidence proving that the Central Street Property was foreclosed upon, that Bond purchased the property at a sheriff's sale, and that Plaintiff failed to redeem his interest in the property prior to the expiration of the redemption period. Further, Defendant has established that Bond, as landlord, was awarded the right of possession of the Central Street Property on September 8, 2009 because Plaintiff failed to pay past-due rent. Therefore, the evidence offered by Defendant establishes that Plaintiff was not susceptible to pecuniary loss from damage to the Central Street Property because he was not the owner of the property, did not have a right of redemption, and no longer maintained the right to possess the property

as a tenant. Accordingly, the burden shifts to Plaintiff to establish that a genuine issue for trial still exists. *Horton,* 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). Whiteside argues that, in spite of the uncontroverted evidence that Bond was the rightful owner of the Central Street Property at the time of the fire, he retained an option to purchase the property, and therefore, held an insurable interest in the property. (Pl.'s Resp. at 8.) To support his argument, Whiteside avers that he was told by Bond that if he leased the property he would be able to regain ownership, and relies on a notation in Bond's collection notes to support his contention. (Pl.'s Resp. at 8.) The notation, in pertinent part, states,

> Told him . . . I will set him up on a lease to keep him in the premises. Told him nothing was guaranteed at this point, M [sic] but if he can make his payments then I will do everything I can to keep him there and try to get him ownership back.

(Pl.'s Resp. Ex. C.) Whiteside's argument, however, is unavailing, because the evidence clearly shows that Bond never agreed to grant Whiteside an enforceable option to purchase the property.

An option to purchase property, under Michigan law, is "a contract by which the owner of property agrees with another that he shall have a right to buy the property at a fixed price within a specified time." *Bailey v. Grove*, 213 N.W. 137, 139 (Mich. 1927). Whiteside has failed to offer any evidence tending to prove that Bond *agreed* to grant him an option that fixed the purchase price and established a specified time within which he could exercise the option. His reliance on the collection note entry is misplaced. The entry does not bolster, but undermines, Whiteside's argument that he was granted an option. The language of the collection note entry is not equivocal in stating that Plaintiff was told "nothing was guaranteed," (Pl.'s Resp. Ex. C), and supports a

8

conclusion that Bond never *agreed* to grant an option.  Additionally, the only other evidence before the court related to the option cuts against Plaintiff's argument.  The purported lease agreement explicitly states that "[t]his Lease *does not obligate* Landlord to sell or finance the sale of the Premises to Tenant(s) in the future, however if Tenant(s) makes timely payment of their financial obligations in this Lease, Landlord *might consider* a future sale to Tenant(s)."  (Def.'s Reply Ex. C (emphasis added).)  Ms. Roberts's deposition testimony further supports this view:  Bond's policy when renting a foreclosed property to the original mortgagor was to "*consider* selling the home back to the owner" if the mortgagor made timely rent payments.  (Def.'s Reply Ex. A at 47 (emphasis added).)

Thus, the uncontroverted evidence supports the conclusion that Whiteside has failed to establish that a genuine issue for trial exists.  The record is devoid of evidence that could support a finding that Whiteside possessed an enforceable option to purchase the Central Street Property.  At best, the evidence offered by Whiteside could establish that if he made timely rent payments over the course of the lease, Bond would contemplate engaging Whiteside in a land contract by the terms of which the Central Street Property could be purchased and during which time an insurable interest would no doubt have arisen.  *See Graves v. Am. Acceptance Mortg. Corp.*, 677 N.W.2d 829, 833 (Mich. 2004) ("[U]nder a land contract, although the vendor retains legal title until the contractual obligations have been fulfilled, the vendee is given equitable title . . . .").  In a similar way, if the property owner had *agreed* to grant Whiteside an option to purchase the property, an insurable interest would have arisen so long as the option was enforceable.

9

Whiteside, however, has not supported his contention that before the November 2009 fire he possessed an insurable interest in the form of either an option or a contract to purchase the property, and therefore, the court will grant Defendant's motion for partial summary judgment. Accordingly,

### III. CONCLUSION

IT IS ORDERED that Defendant's "Motion for Partial Summary Judgment . . ." is GRANTED as to Plaintiff Edwin Whiteside.

      s/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated: October 13, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 13, 2011, by electronic and/or ordinary mail.

      s/Lisa Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522